5 How. 401—Obsolete—*See Act of* 1851.

NEW-YORK PRACTICE REPORTS. 401

Mechanics' and Farmers' Bank agt. Rider and Wilbur.

## SUPREME COURT.

The President, &c., of the Mechanics' and Farmers' Bank, of the city of Albany, agt. Rider and Wilbur.

Under the first clause of § 397 of the Code, *any party* to *any action* may be examined as a witness on behalf of any other party—a plaintiff for his coplaintiff, and a defendant for his codefendant, upon *joint contract* or otherwise.

The court must discriminate and restrict the testimony offered to its proper office, so that it shall not be used on behalf of the party examined.

Parker, *Justice, dissenting, holding that upon a joint contract, where the defence was joint, a separate judgment could not be rendered, and therefore a defendant could not be examined on behalf of his codefendant as to such joint defence. See the case of Selkirk agt. Waters, ante page* 296, *and also the dissenting opinion in this case.*

*Albany General Term, May* 1851. This action was brought to recover the amount of a promissory note for $7000, signed by the defendants jointly, dated June 12, 1848, and payable to the order of the plaintiffs' cashier, four months after date. The defence was usury. The cause was tried at the Albany circuit in June 1849, before Mr. Justice Parker. Upon the trial, each defendant offered his codefendant as a witness to prove all the facts stated in his answer. The plaintiffs' counsel insisted that the defendants, being joint contractors, were incompetent witnesses for each other, and the court so decided. The witnesses were therefore excluded, and the defendants' counsel excepted to the decision. The jury, under the direction of the court, rendered a verdict for the plaintiffs for the amount of the note and interest, and judgment having been perfected thereon, the defendants appealed to the general term.

M. T. Reynolds, *for Plaintiffs.*

S. Stevens, *for Defendants.*

By the Court, Harris, J.—This case presents directly for adjudication, the question whether, under the first clause of the 397th section of the Code, one joint contractor is a competent witness for his cocontractor, who is also his codefendant. The

51

question is one of considerable difficulty; but its difficulty consists not so much in any obscurity in the statute itself, as in the consequences which are supposed to result from a literal application of the language of the section.    The common law rules relating to the competency or incompetency of witnesses are, to a great extent, arbitrary and technical.    To say that a witness who has an interest in the event of a suit, to the amount of six cents, shall be excluded, while another whose whole fortune, though not involved in the particular issue upon trial, may depend upon the question to be decided by the trial is admitted, seems little less than an absurdity.    To say that one who, as bail or security, may be contingently liable to a limited amount can not testify, even though he may feel himself perfectly secure in the responsibility of his principal, while a child, though in the confident expectation of inheriting the estate of his 'parent, and in fact regarding the estate as already his own, is allowed, without objection, to testify upon an issue involving the whole of that estate, would seem to any mind, not trained to regard with veneration every thing pertaining to the common law, as the extreme of absurdity: and yet these are among the prominent and acknowledged rules of evidence, at common law, sanctioned by the acquiescence of centuries.    The innovation which the code proposes to make upon these venerable absurdities, seems to those who have been accustomed to deal with, and apply the common law rules of evidence, startling and dangerous.    Hence the effort has been made by some, more alarmed at the radical change effected by these provisions of the code than others, to restrict and limit their application to particular classes of cases.    Some think the particular section in question only applicable to cases of tort, in which, at common law, a recovery might be had against one defendant, while another was acquitted.    Others think it is applicable only to cases founded upon equitable principles.    Mr. Justice GRIDLEY, and his associates in the fifth district, seem to have adopted the latter opinion.    Accordingly it was held in a case decided at the general term, in which that learned judge delivered the judgment of the court, that by the clause in question "the legislature merely

Mechanics' and Farmers' Bank agt. Rider and Wilbur.

intended to adopt the rule as it prevailed in chancery, and enact it as a part of the statute law, applicable to cases arising under the Code" (Munson vs. Hagerman, 5 *Howard*, 223). I am not sure that I understand precisely to what extent the learned judge would give effect to this statute. The language of his proposition is certainly not very explicit; but the practical application of his rule was, in the particular case then before the court, to exclude a defendant, offered as a witness for his codefendant, in an action to recover damages for the conversion of personal property.

A similar question has been decided at a general term in the sixth judicial district. There the action was against several defendants, for an assault and battery. At the circuit, one defendant was offered as a witness for his codefendants, and rejected. Upon appeal the decision at the circuit was reversed; and it was held that in such actions, at least, the defendants are competent witnesses for each other. A very elaborate opinion was written in the case by Mr. Justice SHANKLAND. He states the result of his examination as follows: " Upon the fullest consideration, I have no doubt that in actions commenced since the code, a plaintiff or defendant may, *in all cases*, call his fellow plaintiff or defendant to testify to all questions pertinent to the cause and that judgments may be entered, in accordance with the facts, in every diversity of form, as was formerly done by decrees in the late court of chancery (Parsons vs. Peirce, 3 *Code Rep.*, 177). A very able opinion was also delivered by Chief Justice MONSON, in the same case. That learned judge arrives at the same result. The opinion is yet in the hands of the reporter. The whole question, therefore, as to the effect to be given to this particular section of the code, may be considered as fairly open for discussion and adjudication.

In considering this question, it may be well to bear in mind that an essential change in the form of the judgment which may be rendered in any action, where there are two or more plaintiffs or defendants, has been made by the 274th section of the Code. Now, as has been well said by Mr. Justice SHANKLAND, " judg-

ments may be entered in accordance with the facts, in every diversity of form." One plaintiff may recover; another may be defeated. Judgment may be rendered in favor of one defendant, and against another; and that too, whether the action is for a tort, or upon a contract. In an action upon a joint contract, like that now before the court, it may well happen that the plaintiffs may recover judgment against one of the defendants, and not against the other.

The sections of the code which immediately precede the 397th, from the 389th to the 396th, inclusive, relate to the examination of a party on behalf of the adverse party, and contain directions, in detail, in respect to such examinations. The 397th section then follows, and declares in language explicit and unqualified, that " a party may be examined on behalf of his coplaintiff or a codefendant." It is not, let it be observed that a party in an action for a tort, or an action founded upon principles of equity, or any other specified kind of action; but *any party* in *any action*, may be examined upon any pertinent matter, not only when called by the adverse party, as provided in " the preceding sections, but also when called by his coplaintiff or his codefendant. In short, *any party to any suit* may have the benefit of the testimony of *any other party* to *the same suit*. But when such a party is called to testify by his coplaintiff or his codefendant, the effect of his testimony must be restricted; otherwise, while in fact giving evidence for another, he might also be giving evidence in his own behalf. Hence the qualification which immediately follows the general proposition of the section: " The examination thus taken shall not be used on behalf of the party examined." Thus he is rendered, in legal effect, disinterested. His testimony can not, legally as it otherwise might, operate to maintain the issue to be tried on his behalf. It is true, that some discrimination on the part of the jury, and some caution on the part of the court, is requisite to restrict such testimony to its legitimate office. But there is no more difficulty in this, than in some other cases, now quite familiar in practice, as for example, the case of the maker and endorser of a note, sued under the statute, in the same action,

Mechanics' and Farmers' Bank agt. Rider and Wilbur.

and one defendant examined, as he may be, for his codefendant. In such a case, it is well known that it often happened, that one defendant succeeded upon the testimony of his codefendant, whilst judgment was recovered against the party testifying, for the want of the same evidence. It is intended by the provision of the code now under consideration, to extend the same principle to all other cases. Thus, in the case now before the court, it might happen that the testimony of one of the defendants, being available for his codefendant, might be sufficient to exonerate such codefendant from liability upon the contract, while the witness himself, his own testimony not being available on his own behalf, might, for the want of such testimony, remain liable. A judgment might thus be recovered in favor of one defendant, and against the other, upon the same contract.

Nor could it be objected, under such circumstances, that the witness should be excluded on the ground of interest. Suppose, in the case under consideration, the defendant Rider had been examined as a witness, and he had proved enough to entitle the other defendant to a verdict in his favor, could such a result affect his interest favorably? On the contrary, might not the effect of his testimony be to charge himself solely, when, without such testimony, the judgment might have been against both defendants, and he if compelled to pay the amount, entitled to contribution. A case might arise, I admit, where the objection on the ground of interest might prevail. Thus, where two defendants are sued as joint contractors, and yet, as between themselves, one of them is a principal and the other a surety, I will not now say that the principal would be a competent witness for his surety. The effect of his testimony might possibly be to relieve his surety, and thus shield himself from ultimate liability for his indemnity. I concede that under the 399th section of the Code, restricting the general application of the preceding section, such a witness, being a party to the action, might be excluded "by reason of his interest in the event of the action."

This, then, I understand to be the intent and import of the 397th section of the Code. Any party to any action may be

Mechanics' and Farmers' Bank agt. Rider and Wilbur.

examined as a witness on behalf of any other party; but when examined on behalf of a coplaintiff or codefendant, his testimony is not to have the same general effect as other testimony in the cause, but is to be applicable only to the issue between the party on whose behalf he is examined and the adverse party. Such a witness may be excluded on the ground of interest; but as his testimony can not affect the issue between him and the adverse party, this objection can only be sustained when the party offered as a witness is not only interested in succeeding himself, but also in having the party by whom he is offered, succeed also. In the ordinary action against joint contractors, like that before us, the witness has no such interest. On the contrary, if he has any interest at all, it is to increase the number of those who are to assist in the payment of the recovery.

It has been said that the effect of this rule is to allow several defendants by mutually becoming witnesses for each other, to exonerate each other from liability. There is much force in this consideration; but it goes only to the question of credibility. It can not affect the competency of the witness. The same reciprocal service might be rendered by witnesses who were parties to separate actions, in which case no objection on the ground of interest would be allowable. Where parties are called to testify for each other, under such circumstances, their testimony ought to be received with extreme caution. Indeed, a discreet jury, properly instructed in relation to their duty, would hardly feel themselves justified in deciding any question upon such evidence, unless sustained by other testimony, or corroborating circumstances; the testimony itself is competent. It belongs to the jury to say, as in other cases of a suspicious character, what weight is to be given to it.

In one case, indeed, and in but one, a party may be received as a witness for himself. A plaintiff or defendant having been examined as a witness at the instance of the adverse party, may have given evidence in his own favor, and at the same time prejudicial to his coplaintiff or codefendant, who is a joint contractor, or united in interest with him. In such a case, it is but just that

Mechanics' and Farmers' Bank agt. Rider and Wilbur.

the party to be affected by such testimony should be heard also. Accordingly it is provided in the last clause of the 397th section, that a party thus situated may offer himself as a witness to the same cause of action or defence, in respect to which his co-contractor or the party united in interest with him has testified, and that he shall be received. In this case, no objection on the ground of interest can be sustained.

This view of the provisions of the Code relating to the examination of parties·as witnesses, gives effect to each provision, and renders all harmonious. It gives to the language employed by the legislature its natural and most obvious import. It avoids all forced construction and leaves nothing for interpretation. No two persons "of common understanding," and who were uninitiated in the common law rules of evidence, would differ in their construction of these sections. On the other hand, to hold that while all the other provisions of the Code relating to the examination of parties, apply to all actions, the first clause of the 397th section must be limited in its application to such actions as are founded upon principles of equity, or to any other particular class of actions, would be to adopt an unnatural and forced construction of the language of the statute; a construction uncalled for, and unwarranted by any other provision in the Code, and opposed to the great principle avowed in the preamble of that act, which is to abolish the distinction between legal and equitable remedies, and establish an uniform course of proceeding in all cases. My opinion, therefore is, that the learned judge who tried this cause at the circuit, erred in excluding the defendants when severally offered as witnesses for their codefendant. I think the testimony should have been received and submitted to the jury, with particular instructions as to its legal effect, and proper cautions as to the weight to be attached to it. Upon this ground alone, I am in favor of reversing the judgment, and awarding a new trial, with costs to abide the event.

Justice WATSON, concurred.

Justice PARKER read the following dissenting opinion:

Parker, Justice.—This suit was brought to recover on a joint note, made by the defendants on the 12th June 1848, for $7000 and interest. The note was given for borrowed money, and· the defence set up was usury. On the trial, after the note was proved, each defendant offered the other defendant as a witness to prove the defence of usury. The judge excluded such evidence, and the defendants excepted. The question now presented is, therefore, whether, under the Code, in an action against two joint contractors one defendant may be examined as a witness for his co-defendant, to prove—not a defence personal or peculiar to his codefendant—but a defence to the entire joint contract. The question is important and demands the most deliberate consideration.

The evidence was offered under the first clause of section 397 of the Code, which is as follows: "A party may be examined on behalf of his coplaintiff or a codefendant." It is said this means "*every* party may be examined," &c., and I am willing to concede, for the purpose of discussing this question, that such is its meaning, and to give it an application accordingly. In a suit on a contract that is several as well as joint, each one of two defendants is of course competent, and may prove any defence in behalf of his codefendant, as fully as if separate suits had been brought. And in actions on a contract, joint and not several, I have no doubt each defendant is a competent witness in behalf of his co-defendant, to prove any defence that is personal to his codefendant, such as a discharge in bankruptcy, infancy, &c. Actions. for torts stand on the same footing as actions on contracts, which are several as well as joint; as to such actions, I have stated my opinion more fully in Selkirk agt. Waters (5 *How. Pr. R.* 296). In *every* action, therefore, a party may be examined on behalf of his coplaintiff or codefendant.

But it by no means follows that the party thus made competent in every action, may be permitted to prove whatever the coparty calling him chooses to ask him, as in every other case, the testimony must be confined to the issue on trial, and to matters relevant and pertinent.

Mechanics' and Farmers' Bank agt. Rider and Wilbur.

Now, there were no matters in issue between the plaintiff and either of the defendants separately.   On the contrary, there was but one contract, and that was between the plaintiffs of the one part, and the two defendants jointly of the other part.   The plaintiffs made one party to the contract and the two defendants, jointly, the other party.   If either defendant had set up any defence, personal or peculiar to himself, he could of course, have been permitted to prove it by his codefendant; because that would have been a severance of the contract and would have authorized separate judgments.   But such was not the case here.   There was but one contract, and that was joint and indivisible; and the defence was as joint as the contract.   It went to the entire demand; if it fell short of that it was incomplete and unavailable.

The presiding justice in his opinion, from which I dissent, assumes that in this case, and on such an issue, a judgment might have been rendered in favor of one defendant and against the other.   If this was so, I admit that each defendant was a competent witness to prove the defence for the other; for, if this was so, the case stood upon the same footing as a joint and several contract.   I concede that if, on such a defence, several judgments could have been rendered, the evidence offered should have been received.   We all agree, I believe, that the whole case turns upon this point.   If there could have been a several judgment, the evidence would have been relevant.   If there could not, the evidence would have been entirely immaterial and inapplicable.

It is not claimed that, before the adoption of the code, separate judgments could be rendered upon a joint contract, except in a very few cases where one of the defendants had a personal defence that amounted to a severance of the contract; as where one of the defendants pleaded infancy or a discharge in bankruptcy. But it is supposed that by section 274 of the Code, the court is authorized to render several judgments in every case where there are two or more defendants.   The section is as follows: "Judgment may be given, for or against one or more of several plaintiffs, and for or against one or more of several defendants, and it

may determine the ultimate rights of the parties on each side, as between themselves," &c.

If this were all on the subject, to be found in the code, I should by no means infer, that it was intended to authorize several judgments on a joint contract. On the contrary, I should suppose it was merely giving authority to conform the judgment to the contract, as it should be ascertained to be on the trial. This the court could not do under the former practice. There were certain technical rules of practice, that operated unjustly, and which it was designed to abrogate. For instance, if under the late practice a suit was brought against three persons as partners, and it turned out on the trial that but two of them were partners the plaintiff was nonsuited and driven to a second suit to recover his demand; but as the law now stands, under the Code, judgment would be recovered against the two proved to be partners, and a judgment would be given in favor of the other defendant. So in an action on a bond purporting to be signed by three defendants, if it is proved on the trial that the name of one is a forgery, judgment is given in favor of that defendant and against the others. But under the late practice, judgment would have been given in favor of all the defendants; and the rule is now the same as to plaintiffs. Three persons bring an action, it is proved on the trial that the demand in controversy is due to but two of them, and judgment is therefore rendered in their favor and against the other plaintiff. Under the late practice, all three of the plaintiffs would have been nonsuited. This change in the practice, so clearly promotive of the administration of justice, has been effected by the section of the code last cited. Its object plainly was to enable courts to enforce contracts, as they should be ascertained, at the trial, to have been made. Its object, as plainly, was not to authorize courts to violate contracts by rendering several judgments, when the parties had made such contracts joint and not several.

In one view, the statute is a highly beneficial one, effecting a much desired and valuable reform; enabling courts and juries to do justice between the parties, where before, they were precluded

by technical but arbitrary and unyielding rules of practice from doing so. In the other view, it is a dangerous invasion of the rights of the citizen, severing and violating his contract, and refusing to enforce it in the form in which it was made. If the Code has difficulties to encounter on the one hand, from those who look upon its innovations with apprehension, it has quite as much to fear on the other, from a construction of its provisions that virtually gives to the court the power to alter the agreements of parties and to fashion them to suit its own pleasure.

If the construction claimed by the defendants for the 274th section is correct, then in all cases in a suit on a joint contract, judgment may be rendered in favor of one and against the other defendant. In other words, there are no longer any joint contracts; all contracts are to be treated as several. Surely this could never have been intended. If, therefore, there were no other provisions of the Code throwing light on this subject, it would seem to me absurd to say that it was intended to abolish all distinction between joint and several contracts.

But there is much in the Code bearing upon this point and we are bound to look at all its provisions, and so to construe them, if practicable, as to give them a harmonious operation.

That joint contracts are still recognized, and are to be enforced as such, is apparent from chap. 11 of title 12 of the Code, entitled of " Proceedings against joint debtors," &c., in which section 375 points out how a plaintiff may proceed when a judgment shall be recovered against one or more of several persons *jointly indebted upon a contract,* by permitting those not originally served with process to be summoned to show cause why they should not be bound by the judgment. That is applicable to a case in which, as under the former practice, the original judgment was in form against all the joint contractors.

Again, section 397 recognizes the character of joint contractors and their unity of interest, by providing that whenever " one of several plaintiffs or defendants, who are joint contractors, or are united in interest, is examined by the adverse party, the other of such plaintiffs or defendants may offer themselves as witnesses,

&c." This privilege is confined to joint contractors, and the distinction between joint and several contracts is thus clearly recognized.

It is also provided in the second clause of section 274 as follows: "In an action against several defendants the court may, in its discretion, render judgment against one or more of them, leaving the action to proceed against the others, *whenever a several judgment may be proper.*" It seems then there are some cases where a several judgment is not proper. What are they? Of course they are not cases on several contracts, nor for torts, which are several as well as joint, for in those cases several judgments were always proper. They can be no other than cases of joint contract.

But there is another and a controlling section of the Code, which seems to have been entirely overlooked by those who contend that a several judgment may be rendered on a joint contract.

"§ 136. Where the action is against two or more defendants, and the summons is served on one or more, but not on all of them, the plaintiff may proceed as follows:

1. If the action be against several persons jointly indebted upon a contract, he may proceed against the defendant served, in the same manner as at present, and with the like effect, unless the court shall otherwise direct; or,

2. In an action against defendants severally liable, he may proceed against the defendant or defendants served, in the same manner as if such defendant or defendants were the only parties proceeded against.

3. If all the defendants have been served, *judgment may be taken against any or either of them severally, when the plaintiff would be entitled to judgment against such defendant or defendants if the action had been against them or any of them alone.*"

These provisions show unequivocally that the contract as made by the parties is to be respected and enforced; and that it can not be severed by rendering a several judgment.

The suit now before us comes within the 3d subdivision. Both

Mechanics' and Farmers' Bank agt. Rider and Wilbur.

the defendants were served, and the contract being joint and not several also, the plaintiff would not have been entitled to judgment against either of the defendants if the action had been commenced against one of the defendants alone. He can not, therefore, take judgment against one when they are sued together. If sued alone the defendant would have found a remedy provided for him by demurrer, under § 144, sub. 4, on the ground that there was a defect of parties defendant. This last provision was evidently designed for such a case.

I think I need say no more in defence of the proposition that on the defence of usury in this case a judgment could not have been rendered in favor of one defendant and against the other.

Suppose then, one of the defendants had been called to prove the usury; his evidence could not be received in his own behalf (*Code*, § 397), and as to the other defendant alone there was no separate issue—nothing to try. In as much as no judgment could be given in favor of the other defendant alone, the evidence would not bear upon the case, and could have no legal effect. If one defendant had been permitted to testify and had proved the usury, and the trial had stopped there, what judgment could have been given? Not in favor of both defendants for the statute precludes the witness having any benefit of his own testimony. Not in favor of one defendant, for that can not be on a joint contract. The judgment would, after all, have been given for the plaintiff, and therefore, it will be perceived, the evidence of the witness would have been entirely immaterial and irrelevant.

A joint note given at one transaction, and signed by two defendants, can not be usurious as to one and not usurious as to the other defendant.

If the mode of the defence attempted on the trial can succeed, two persons entering into a joint contract with one person, will have greatly the advantage in litigating concerning it. The two persons can be sworn, each for the other, but the other party to the contract and the action can not be permitted to testify.

The construction I have given to the section in question, har-

monizes entirely with the other provisions of the act and gives effect and usefulness to a statutory reform in the law of evidence. I think I have shewn that the construction contended for by the defendants is objectionable in both these respects, and destructive to the rights of parties. After a very careful examination of the case I am entirely satisfied the decision at the circuit was correct, and that a new trial should be denied.

Justice WRIGHT did not hear the argument, and was not present at the decision.