CONTINENTAL NAT. BANK OF BOSTON *v.* STRAUSS *et al.*, (two cases.)

(*Superior Court of New York City, General Term.* January 11, 1892.)

1. PARTNERSHIP—ACTION AGAINST SPECIAL PARTNER—PLEADING.
    The complaint in an action against a special partner, seeking to charge him as a general partner, need not allege the attempt to form a limited partnership, nor the defects which rendered the special partner liable. It is sufficient to charge him as a general partner, and upon the trial show that as to the creditors he is such.

2. SAME—LIABILITIES OF SPECIAL PARTNER.
    A special partner cannot be made liable as a general partner because one of the general partners under the contract of partnership was an infant, where it does not appear that the infant has repudiated the contract or attempted to avoid its obligations.

3. SAME.
    An action brought by a special partner against his general partners in the interest of the firm creditors, and for the preservation of the partnership trust funds, in which the special partner is appointed receiver, is not such an interference with the business as will make him liable as a general partner.

4. SAME—DISSOLUTION OF FIRM.
    The dissolution of a limited partnership by insolvency, prior to the expiration of its term, will not render the special partner liable as a general partner.

5. SAME—PLEADING.
    In an action against a special partner to charge him as a general partner, plaintiff cannot object that defendant failed to allege and show that the capital contributed by him had been exhausted in the business, where it appears from plaintiff's own evidence that the firm's obligations were more than sufficient to exhaust the entire capital, general and special.

6. SAME.
    Where, in an action seeking to charge a special partner as a general partner it appears from plaintiff's allegations and proofs that a limited partnership was duly formed, the burden is upon plaintiff to show the facts rendering defendant liable as a special partner. Defendant need not affirmatively prove the due formation of the partnership, or subsequent compliance with the law.

7. SAME.
    A special partner, who contributes to the firm an agreed amount of capital, is not responsible for the manner of its use by the general partners, nor is he bound, in an action to hold him as general partner, to show what they did with it.

Appeal from jury term.

Action by the Continental National Bank of Boston against Nathan Klein, Augustus Hoexter, Henry W. Strauss, and Leo W. Hoexter, composing the firm of A. Hoexter & Co., on a promissory note indorsed by such firm. Strauss answered, setting up that he was a special partner. Judgment was entered by default against the others. Plaintiff appeals from a judgment dismissing the complaint as against Strauss. Affirmed.

Argued before FREEDMAN, MCADAM, and GILDERSLEEVE, JJ.

*B. F. Watson,* for appellant. *Townsend, Dyett & Einstein,* (*B. F. Einstein,* of counsel,) for respondent.

MCADAM, J. The questions involved in both appeals are substantially alike, and in disposing of them we will take the facts of one case, for the law applicable to that applies equally to both. The action was brought upon a promissory note made by the defendant Klein for $2,749.81; dated October 23, 1884, payable six months after date, and indorsed by the firm of A. Hoexter & Co. The firm of A. Hoexter & Co. was a "limited partnership," formed under the laws of this state, and consisted of the defendants Augustus Hoexter and Leo W. Hoexter, as general partners, and the respondent Henry W. Strauss, as special partner. The plaintiff seeks to hold the respondent liable as a general partner. The complaint was dismissed as against the respond-

ent on the ground that the evidence did not establish that he was liable as a general partner. The partnership of A. Hoexter & Co. was formed on May 1, 1884, for the purpose of carrying on the business of manufacturing and selling men's collars and cuffs. The certificate of partnership provided that the respondent should contribute the sum of $50,000 in cash; that the principal place of business of the partnership should be in the city of New York; and that the partnership should commence on the 1st day of May, 1884, and terminate on December 31, 1886. The complaint did not allege an attempt to form a limited partnership, nor the defects which rendered the special partner liable; but this was not necessary, as it is sufficient to charge him as a general partner, and upon the trial to show that as to creditors he is such. *Sharp* v. *Hutchinson*, 100 N. Y. 553, 3 N. E. Rep. 500. See *Loomis* v. *Hoyt*, 52 N. Y. Super. Ct. 287.

At the close of the testimony the appellant contended that the respondent was liable as a general partner for the following reasons: (1) Because Leo W. Hoexter was a minor. (2) Because the affidavit on the formation of the special partnership falsely stated that the respondent contributed $50,000 in cash. (3) That the respondent had, by commencing an action in the court of common pleas, and having himself appointed receiver, interfered with the business, in violation of the provisions of the law affecting limited partnerships. (4) That by such proceedings he had dissolved the firm prior to the expiration of the term set forth in the certificate of its formation. (5) That the respondent did not allege in his answer, or show by proof, that the partnership was dissolved by the act of the parties prior to the time limited in the certificate; and that the $50,000 capital alleged to have been contributed by him had been used or exhausted in the business. We will consider these points in the order in which they are made.

The first is untenable. The policy of the law is to encourage and protect infants; hence they are not incapable of entering into a partnership, since it cannot be universally affirmed that it may not be for their benefit. Story, Partn. § 7. The partnership contract of an infant is not void, but voidable only, and the defense of infancy is a personal privilege. *Avery* v. *Fisher*, 28 Hun, 508; *Slocum* v. *Hooker*, 13 Barb. 536; *Baldwin* v. *Van Deusen*, 37 N. Y. 487; *Hangen* v. *Hachmeister*, 49 N. Y. Super. Ct. 34; Lindl. Partn. p. 74. In *Avery* v. *Fisher, supra*, the court said: "The fact that the copartner who made the assignment in this case was at the time an infant does not invalidate the assignment, for the reason that infancy is a personal privilege, and no one but the infant can take advantage thereof; and for the further reason that infancy does not incapacitate a person from becoming the agent of another. Where a partnership is created between an adult and an infant, the relation of mutual agency growing out of the partnership relations exist to the same extent as if both the parties were adults. The contract of partnership being legal and binding *per se* upon the adult, and equally so upon the infant until disaffirmed by him, it follows that the partnership must be bound by the act of the infant partner at any time before an actual disaffirmance by him of the partnership agreement." In *Slocum* v. *Hooker*, 13 Barb. 536, it was held that an infant's contract of partnership was binding upon him until disaffirmed by him, and that consequently he was a necessary party to an action against the partnership. The statute provides that limited partnerships may be formed "by two or more persons, upon the terms, with the rights and powers, and subject to the conditions and liabilities herein prescribed." 2 Birdseye, Rev. St. p. 2169, § 1. There is nothing in the act preventing infants from becoming general partners, nor making the special partner liable for their contracts. There is nothing in the record which shows that the infant repudiated the contract of partnership, or attempted to avoid any of its obligations; so that the questions that might have arisen had he elected to disaffirm the same do not arise nor call for decision.

The second point raised is without proof to support it, and therefore requires no further comment.

The third point, as to the effect of the common pleas action in which the respondent had himself appointed receiver, is also without merit. It is only necessary to say that that action was brought in the interest of the creditors, and for the preservation of the trust funds of the partnership, and was not any such interference by the special partner as makes him liable, under the provisions of the statutes, as a general partner.

The fourth point is without force, because the partnership, if dissolved prior to the time set forth in the certificate of its formation, was dissolved by reason of the insolvency of the firm and by operation of law, and not by the voluntary acts of the parties.

On the fifth point, as to whether the $50,000 in capital, alleged to have been contributed, was exhausted or not, it is only necessary to say that the records offered in evidence by the plaintiff show that the firm was insolvent, and that the obligations against it were more than sufficient to exhaust the entire capital, general as well as special.

Upon the trial it was made clear that the respondent Strauss was a special, and not a general, partner. The plaintiff undertook to prove partnership by showing that Strauss' name appeared upon a sign in front of the defendants' place of business, but the witness testified that it so appeared as special, and not as general, partner. The plaintiff thereafter offered in evidence a deposition made by Strauss, and by it it appeared affirmatively that Strauss was a special, and not a general, partner; so that there was really nothing to go to the jury upon any of the questions involved in the case. On this proof, it was not necessary for the respondent Strauss to show that he had literally complied with the provisions of the law in regard to limited partnerships. There being a limited copartnership, presumptively all its provisions were complied with; for the law will not assume, in the absence of proof, that a man does an unlawful act, but will assume that he has performed his duty. The *onus* was therefore upon the plaintiff to point out the irregularities in the partnership which made Strauss liable as a general partner. Not having pointed out or proved any such irregularities, the trial judge properly dismissed the complaint as to him, and there is no force whatever in the exception taken to this decision. The plaintiff argues that the existence of the special partnership could be proven against the plaintiff in one way only, *i. e.*, by showing compliance with the statute. *Ropes* v. *Colgate*, 17 Abb. N. C. 136; *Van Ingen* v. *Whitman*, 62 N. Y. 513. This is true as an abstract proposition, but the mode of proof and the *onus* in this instance were changed by the plaintiff's own evidence. The complaint charged that Strauss was a member of the firm of A. Hoexter & Co. Strauss denied that he was a member therein, except as special partner. Strauss' interest as special partner, and his contribution of $50,000 capital as such, were set forth as the title upon which he based his right in the common pleas action to call upon the general partners to account for their maladministration of the trust. The proofs offered by the plaintiff made out, as against it, a *prima facie* case of limited partnership, sufficient to call upon it to point out the errors or irregularities in the formation of the firm that made the special partner liable, if any such existed. In other words, the law would not presume, in the face of this evidence, that Strauss had illegally formed the limited partnership, or had done any wrong. The law infers that every man does his duty, has not incurred a penalty, and has complied with the law. This presumption, aided by the proofs offered by the plaintiff that Strauss was a special partner, and had contributed $50,000 as such to the capital of the firm, and that a limited partnership was formed "pursuant to the provisions of the Revised Statutes of this state," means that it was legally formed under said statutes; not illegally or irregularly. See *Leland* v. *Cameron*, 31 N. Y. at page 121. This dis-

pensed with the production of the certificate of formation required by section 8 of the statute, because the special partnership was sufficiently proved by the plaintiff, without requiring the corroborating evidence of the papers themselves. If the *onus* of proving the special partnership had fallen on the defendant, as it generally does, the defendant could have been required to produce the best evidence of it, *i. e.*, the original papers themselves; but where a plaintiff, without objection, proves a special partnership "under the statute" without the formality of producing the original papers, the evidence, when once in the case, with all the presumptions following it, must be acted upon as though the best evidence of which the thing is capable had been produced. The plaintiff did not call for better evidence of the special partnership,—indeed, at no time denied it; and the entire theory of the plaintiff's case as presented at the trial was that Strauss, although only a "special," had for some reason, not made clear, rendered himself liable as a "general," partner, as to creditors of the firm.

The plaintiff also contended that the defendant was bound to show that his contribution of $50,000 as a special partner was used or had been exhausted in the business. But this was not necessary. A special partner who contributes to a firm an agreed amount of capital is not responsible for the manner of its use by the general partners, nor is he bound to show what they did with it. They become trustees with regard to it, and the person paying them the money is not responsible for their misapplication of it. If the special partner is not to "interfere with the business," it would be next to impossible for him to regulate the use of the money contributed by him. This is one of the things the special partner, or a creditor in a proper case, may by bill require the general partners to account for, where fraud and maladministration are charged against them. The property of a limited partnership, after insolvency, is deemed a trust fund for the benefit of all the creditors. If the partners neglect to place it in the hands of a proper trustee for distribution, any creditor may proceed at once, in equity, for the appointment of a receiver and distribution. *Innes* v. *Lansing,* 7 Paige, 583; *Whitewright* v. *Stimpson,* 2 Barb. 379. The special partner may, in a proper case, invoke the same remedy. True, section 17 of the act provides that, "if he [the special partner] shall interfere, contrary to these provisions, he shall be deemed a general partner." But section 18 provides that "the general partners shall be liable to account to each other and to the special partner for their management of the concern, both in law and equity, as other partners now are by law." As was held in *Hogg* v. *Ellis,* 8 How. Pr. at page 474: "This liability to account must be proper and necessary, as well after the dissolution of the partnership as before, and must, therefore, have been intended to apply to both cases. It is a liability to account in the same manner as other partners are, that includes the liability to have a receiver appointed when it would be done in ordinary partnerships." A bill may be filed by one partner for a receiver, founded on some breach of duty by the other members of the firm, (Colly, Partn. § 384,) and the receiver, if appointed, represents the partners and their creditors, and holds the assets of the firm as a trust fund for their benefit. It certainly cannot be deemed an unlawful interference with the rights of the general partners or their creditors for the special partner to file a bill, the object of which is to preserve the partnership assets for their benefit from waste or misuse.

Limited partnerships, formed under the statute, are governed, and the mutual rights, duties, and liabilities of the partners are regulated, by the common law, in every respect not taken out of the general rule by the statute. *Ames* v. *Downing,* 1 Bradf. Sur. 321; *Jacquin* v. *Buisson,* 11 How. Pr. 385. The interference by a special partner, which makes him liable as a general partner, is something more than mere observation, or that incidental supervision and advice which a person having capital invested in a concern would naturally give to an enterprise in which perhaps the greater part of

his fortune was invested. It means active participation or domination. Thus, in *Lewis* v. *Graham*, 4 Abb. Pr. 106, the court held that a special partner of a firm with whom property is pledged is not incapacitated by his relations with the firm from purchasing the pledge at a sale made by them. Speaking of the special partner, the court (at page 113) said: "He did not direct or aid in the sale of the securities. An attempt to interfere with the sale of them would have made him liable. A refusal to do so would not involve him in any neglect of duty. * * * The special partner * * * may advise as to the interest of the partnership, but so may any one else. Such advice is no act or control of the partnership funds or duties." In *Bank* v. *Gould*, 5 Hill, at pages 312, 313, the court said: "The special partner may examine and advise in relation to the management of the partnership concerns, but he shall not transact any business on account of the partnership, nor be employed for that purpose as agent, attorney, or otherwise. If he shall interfere contrary to these provisions, he shall be deemed a general partner. Section 17." In the case cited the court found that the special partner went beyond giving advice, and actively participated in the business of the partnership contrary to the section of the act referred to, and "thereby lost his character and protection as a special partner." So in *Bank* v. *Whitney*, 4 Lans. 34, where, during the existence of a limited partnership, the special partner bought out the entire firm property, and continued the business in his own name for his own account, this was held to be an interference with the firm business, contrary to the provisions of the act, that rendered the special liable as a general partner on debts contracted by the firm. In the present case there was no interference with the partnership contrary to the provisions of the act, but only in the manner and to the extent expressly authorized thereby. The interference which makes a special liable as a general partner is not a legal, but illegal, interference; the one being authorized and the other not. The dissolution of a limited partnership prior to the expiration of the term set forth in the certificate of its formation, except in the manner prescribed in the act, may render a special liable as a general partner,—that is, provided the dissolution be a voluntary one; but where it proceeds from involuntary causes the result stated does not follow. Thus (1) the death of one of the partners within the period fixed for the duration of the agreement dissolves the limited partnership. *Ames* v. *Downing*, 1 Bradf. Sur. 321; *Jacquin* v. *Buisson*, 11 How. Pr. 385; Troub. Lim. Partn. § 428. (2) It may, perhaps, terminate by the extinction of its assets, which constitute the capital upon which its business must be done. Story, Partn. § 280. (3) It may be dissolved by decree of the court, or by act of the law, for willful acts of fraud and bad faith, gross instances of carelessness, and waste in the administration of the partnership by one or more of the general partners, (Colly, Partn. § 281;) and this at the instance of any other general partner free from fault, the special partner, or any creditor of the firm interested in the application of the firm property as a trust fund for the payment of the firm's debt. These acts of dissolution, not proceeding from the wrongful conduct of the special partner, do not charge him with the liability of a general partner; and there is nothing in the act relating to limited partnership that was intended to charge him with liabilities for a dissolution caused by any of the involuntary acts or things stated. The case is full of technicalities, yet substantial justice was done, and the rules of law properly observed. We find no error that requires a new trial, and the judgments appealed from must be affirmed, with costs. All concur.